. May it please the court. Good morning. My name is Barbara Queen and I am here today on behalf of Alexander Harris. I'm here today to request this court carefully review the allegations in this matter. Because we believe that the district court ignored vital evidence misinterpreted court precedent and made improper credibility determinations when it determined that it would grant summary judgment to the school system where Alexander Harris worked for over 51 years. I'm here to request that this court reverse the decision. Granting summary judgment to the appellee Powhatan County School Board on his race and age claims. There are certainly genuine issues of fact, which would conclude summary judgment in this matter. First, whether he would retire. Second, the meaning of his January 29, 2009 letter from Mr. Harris, confirming whether or not he would obtain leave that he believes that he was promised from three, the current and two previous superintendents. The meaning of the January 29, 2009 budget numbers that were written that eliminated Mr. Harris's position two days before the school system claimed that Mr. Harris informed them that he wanted to retire. Whether normal procedures were followed for his retirement and what the board's understanding was based on the email sent to them by Dr. Mira. And I also believe the liability of Dr. Mira and Mr. Harris's supervisor, Paul Emig, were directly ignored by the court in this matter. Mr. Harris had quite a long list of responsibilities that he was carrying out on a day to day basis. And we believe that his position was needed and that it was full time. I think that one of the main issues in this case is the interpretation of the Supreme Court precedent in the gross decision. I believe that Judge Gibney at the lower level has put too high of a burden on Mr. Harris to prove his discrimination claims. The court in their determination at page 13 of Judge Gibney's decision created a two-step process that said that the plaintiff must ultimately prove not only that the employer was unlawfully discriminated against on the basis of age, but also that age discrimination was the but for cause of the adverse action. That's a two-step process that I don't believe that the court meant when they wrote their gross decision. Ms. Green, what would you say is your best evidence, the best evidence in the record of age animus here? I believe part of the best evidence for Mr. Harris is when he returned for the 2008-2009 school year, Mr. Harris's supervisor, sorry, I need my glasses, your honors. Mr. Emig, at page 224 of the record, that's Mr. Harris's deposition testimony. Lines 21 through 25, Mr. Harris discusses that Mr. Emig started to pressure him to retire. Also, there was a holdup of his contract from the year before. I'm sorry, I don't have a citation. Okay, I don't mean to cut you off, but there's no question the system wanted him to retire. My question is, what's the best evidence in the record that there was age animus behind the desire for him to retire? Well, there's no smoking gun age animus. But the constant pressure from Mr. Emig when he returns at the beginning of the school year, they wanted him to retire. Don't you think it's time for you to retire? Those discussions, plus then Mr. Harris turns in his notice of intent form to return for the next school year, and it's not accepted. They keep on. But what is the nexus with age animus in any of that? Well, your honor, there's no direct, it's all related. I believe it's related to his age. Pressuring somebody to retire, he's been with the school system for 51 years at this point. There's no direct evidence. You know, in the Reeves case, there were some comments about his age. There's none of that in this case. But there is, I think, under the Reeves purview, that there is direct, there is evidence that he can disprove the reason that the employer is saying that this all happened. They claim that Mr. Harris told them he wanted to retire. And Mr. Harris, there's no evidence of any of that. When you look at the physical evidence alone, it shows that he wanted to come back for the school year. He had been there for 51 years, and there was pressure on him for quite some time to retire, and retirement. I'm sorry, excuse me, I didn't mean to cut you off, Ms. Queen. So you're saying the mere fact that he was over 70 years old permits an inference that it was age discrimination? It sounds like that's where you're heading. Well, it's part of that, and it's also part of the pressure that was on him from the very return from him from the school board. Don't you want to retire? You know, Mr. Harris says no, and then Mr. Emig comes to him and says the school board's going to eliminate your position next year. And you're certainly not going to say that to somebody who's my age. You're going to say that to somebody who's older. You know, maybe they don't like somebody. There could be a lot of reasons, and I'm just concerned that the test that you're arguing permits a lot of speculation just because he is older. Well, he is older, and that pressure for him to retire right from the get-go and the constant pressure there for him is certainly, I believe that it is evidence of an age animus. They didn't do that to anybody else. This is all directed at Alexander Harris. Ms. Green, I think I see what your argument is in a sense. For example, if you were a younger person, when you put in papers to say, I intend to renew, you just put them in. But because of his age, they held his, what you call pressure. I'm going to give you a hypothetical that I'm not saying is the facts of this case, but it might be close to the facts. What if, and it goes back to the question Judge Davis asked about animus as well as just opinions in terms of targeting him. Let's say it is pressure, you call it, but it's because two things. One, I know that they're evaluating your job, whether or not we can do without what you do, and two, there's fiscal pressure to do something. What are they saying? Listen, you really should think about retiring because it may not look good by the time we have the budget. If that was the case, do you believe that that would be animus or illegal in terms of Title VII for age discrimination, if what you call pressure is based on those two things? Well, I think in that situation it would depend upon the reality of where the school system was in their budget. But you don't dispute that there were fiscal restraints, I mean fiscal problems, right? Well, I think that for every school system, for every local governmental system, for this court system, there's pressures that are always going to be there, and that's always going to be their reason. So then to answer the question, you don't dispute it? Well, I think I do dispute it. As I said in my brief, they've come along and said from the get-go that the beginning for Mr. Harris was that he told them he was going to retire, and he has disputed that all from the beginning. But, for example, hasn't your client been saying that for the last decade? Yes, sir. And nobody fired him because he decided not to leave, did they? Right. I think at this point, I don't know if they had enough, and they just wanted him gone. I think that they expected that when Mr. Emig came back at the beginning of the school year, that he was going to pressure Mr. Harris and Mr. Harris was going to say, okay, finally it's time for me to retire. I don't have a citation in the record, and I don't think it's in anybody's brief, but there's comments. People have been asking the man for 20 years if he's going to retire. And when you make a decision whether or not you're going to retire, it's a life-changing decision, and you want to find out how you're going to be, how you're going to be able to continue on with your life. And that is the purpose, and that, I think, is what he has said all along, is the reason that he wrote the letter to the school system to get the pay that he thought that he was entitled to. How do you read that? I'm sorry? That if he had received this, I guess, nearly $20,000 in what he claimed was unpaid leave time, would he have retired? I can't answer that. You can't answer that? No, I can't. Well, I mean, you can tell me how you read it. I'm not asking you for an accurate historical assessment, but just, I mean, it's in the record. Yes, sir, it is. What is the most compelling inference from that, in the light most favorable to your client? In the light most favorable to my client, which I think that Judge Gibney was wrong when he determined that he was telling the school system that he was going to retire, that letter was just what it says, I mean, right on its face what it says, that he's talking about the recovery of his lost leave, which he believed he was entitled to, based on his conversations with the superintendent. I know Dr. Mira denies that she had that conversation with him, but Mr. Harris says that they did. So he's thinking all along that he's going to get this money, so he wants to know. If he retires? He wants to know. Is it a fair inference that he intended to retire if but only if the defendants agreed to pay him his unused leave? From the pressure that was there from the beginning, I think that that would be a fair inference, but I don't believe that it's a fair inference that that letter is the end-all, be-all for Mr. Harris, that he was going to retire. I think that letter is what it says. What else is there? I thought you just agreed that the most compelling inference is that you cut me the check, I'm out of here. Did you not just agree with that characterization? He never received a response to that letter. I understand that. So maybe with the benefit of hindsight, maybe the defendants wish now they had cut the check and saved some attorney's fees or whatever. I don't know. I'm sure they do. I'm sure that they do. So I think you're agreeing that he intended to retire, but it was conditioned on the defendant's acquiescence in paying him for what he claimed was his entitlement to uncompensated leave time. I think that he was trying to decide what the next steps were for his life, and I think that he wanted to know what was going to be ahead of him, and I think the school system knew very well that he had not put in the paperwork that was needed to retire. And the e-mails that are in the record from Dr. Mira before his position is eliminated on March 10th indicate that there's a question here. By the way, is his status today one of sort of suspended animation? He's been terminated, but he's never completed the paperwork for retirement, so for a couple of years he's just been sort of hanging out there? No, sir. When he was let go at the end of June 2009, he initially applied for positions and filed for unemployment, and then when that was not enough, he eventually did fill out the paperwork. So technically today he is in retired status? Yes, sir, he is. And he's been drawing his compensation and his Social Security as he's entitled to? Yes, sir, he is. Okay. So you're actually here. You're not seeking reinstatement, or maybe you are. No, I don't believe that. So you're just seeking damages for what you claim was an unlawful termination? Yes, sir, I do, based on his age, and we believe that Judge Gibney in his decision put too high of a burden on Mr. Harris. You haven't mentioned race here. Are you abandoning the race claim? No, sir, I'm not abandoning the race claim. I have 31 seconds. I think that Mr. Harris, again, there's no smoking gun evidence here, but I think that under Reeves, he has produced evidence that would allow for pretext plus a prima facie case. Well, now, do you have any evidence that's stronger than the evidence of Dr. Meares stating she was concerned about the NAACP getting involved in the case? It seemed to me that that was the statement in which the school administrators had made a racial reference. Yes. And do you have any other evidence of that nature in this record? No, no, Your Honor, there's none. Okay. It's all based on Reeves. Thank you. Thank you, Ms. Green. Ms. Haney? Thank you, Your Honor. Good morning, and may it please the Court. My name is Stacey Haney, and I represent the Powhatan County School Board. The district court was clearly correct when it granted summary judgment to the school board. The school board gave two legitimate nondiscriminatory reasons for its decision to eliminate Mr. Harris' position. The first reason was that the school board believed, when they made the decision to eliminate his position, they believed that Mr. Harris wanted to retire. Mr. Harris admitted this in his own deposition. He admitted that the school board believed he wanted to retire, and that's why the board eliminated his position. The school board's second reason, which is budgetary concerns, Mr. Harris did not even attempt to refute that reason for the elimination of his position. Moreover, there's not a scintilla of evidence in the record from which a jury could conclude that the school board's proffered reason for the elimination of his position was pretext or that the board considered race or age when it eliminated him. Now, Harris, though, was saying that he was essentially discriminated against because there was testimony. His testimony was, I didn't say I was going to retire. I was merely floating a feeler. You know, I may retire if I get this money. And that the trial court chose to accept Emig's version of events rather than Harris' and that this was a disputed issue of fact that should have gone to trial in view of the evidence that there was some issue perhaps of race based on the NAACP reference. Why doesn't that all add up to a disputed, triable issue of fact? Your Honor, when you look at the record, you're correct. That is what Mr. Harris is arguing. But when you look at the record, Mr. Harris himself testified that the school board believed he wanted to retire. So whether he actually said what Emig claims he said, he's conceded that the school board believed he wanted to retire when they acted. And that is consistent with the deposition testimony of Valerie Ayers, a school board member, who testified that she believed Mr. Harris wanted to retire when the board considered eliminating his position. So it's uncontroverted that the school board believed that Mr. Harris wanted to retire. That's only one half of the calculus. Yes, it is undisputed that he wanted to. But the disputed part is he wanted to with a condition which the school superintendent informed the board before they took action. Yes, if he gets his money. That's what he said. That's undisputed. Because you're taking half. Yes, he wanted to. Yes, he did. If you give me the money. Your Honor, respectfully, that's not the way that the district court interprets the letter. We're not talking about the district court right now. We're talking about the facts of the case. I understand that, Your Honor. And when you look at the letter and when you look at the circumstances surrounding the letter, that's really important. Because the circumstances surrounding the letter are that Mr. Harris has been talking about retiring for the last ten years. So he's having a conversation with his supervisor, Mr. Emig. Mr. Emig is also the chief financial officer of the school division. He has responsibility for helping to create the budget. And it's undisputed that there were, in fact, budgetary concerns. So Mr. Harris is having a conversation with Mr. Emig. The subject of retirement comes up. It's logical that it would come up. Mr. Emig is preparing the budget. Mr. Harris, by his own deposition testimony, has been talking about retirement for at least the last ten years. So they talk about it. And Mr. Emig says, Mr. Harris, Dr. Mira is not going to believe you that you want to retire unless you put it in writing. Now, Mr. Emig didn't coerce Mr. Harris into writing that letter. If you look at Mr. Harris' deposition testimony, Mr. Harris went home, talked to his family about it, had his daughter help him draft a letter, and he brought it back and he showed it to Mr. Emig. And Mr. Emig again says, Dr. Mira is not going to believe you that you want to retire unless you put a date in it. He didn't make him do it. Mr. Harris did this. So he puts a date in the letter and he sends it to Dr. Mira. The letter talks about him wanting to recover his lost leave, but it also says he anticipates retiring effective July 1, which is the start of the new fiscal year for the school system. And the letter doesn't say that the retirement is conditional. The letter says that he's not a lawyer. He's 71 years old. The man is writing a letter as best a lay person would understand it. First of all, he didn't want to write a letter. You're laying out facts. I don't know whether it helps you or not. It sounds like it's close to what Ms. Queen says, pressure. Oh, you need to put this in writing. Okay, I'll put it in writing. Well, you need to put a date on it. Well, I'll put a date on it. And then it says money is conditional. But it doesn't say. The letter doesn't say that it's conditional. What does it say about money? The letter says he wants to inquire about his lost leave, and then it goes on to say that he anticipates retiring effective July 1. And Dr. Mira understood it to be an expression that he wanted to retire, and the school board understood it to be an expression that he wanted to retire. Go ahead. Go ahead. Ms. Haney, let's just say, for the sake of argument right here, that we disagree with you on the retirement reason, okay? And you also have the budget reason. Now, in the Fourth Circuit, as I understand it, we don't have any cases that deal with the issue of what happens when those issues are intertwined. If for some reason we do not accept your argument on the issue of whether he stated his intention to retire, why is the issue of budget not so intertwined that it goes down as well? And what I'm looking at and thinking of are the cases such as the Seventh Circuit case, which says that if the issues are factually intertwined so that they cannot be reasonably separated, then the two reasons become triable issues of fact. And so if we were to disagree with you on whether there was a factual dispute on the issue of retirement, is the issue of budget so intertwined that it necessarily falls, too, in terms of summary judgment? No, Your Honor, I don't think that it is. Because regardless of whether Mr. Harris wanted to retire, the school system was undisputedly facing a budget shortfall. This was late 2008, early 2009. In the record, it's clear that there were, in addition to Mr. Harris, there were 13 other positions that were eliminated in the budget. The school board very well could have eliminated his position regardless whether he wanted to retire. There's evidence in the record that shows that over the years he had two supervisors who worked underneath him. And so whether he wanted to retire or not, that's an issue of the school board accommodating his wishes about when he wanted to retire. But the fact remains that they were facing a budget crisis and someone had to go. And when you look at all the facts, that position was one that the school system could do without. And, in fact, they have done without it. The record shows that when you add up the salary and benefits, Mr. Harris' position cost the school division about $100,000 a year. Once his position was eliminated, another employee was given some additional supervisory duties. The two supervisors who had previously worked under Mr. Harris continued the duties that they had assumed in prior years. And so that position was eliminated, savings of $100,000, and the school system only had to expend an additional $10,000. There were money issues, but was he targeted for elimination? Is there evidence in this record that he was targeted for elimination? No, there's not evidence that he specifically was targeted for elimination. There were 13 other employees who were also eliminated. How old was the youngest person who was terminated, whose position was eliminated? Your Honor, I don't recall off. Anybody under 40? Off my head. I do believe that there were some under 40, and there is an exhibit in the joint appendix that was submitted to the district court. Was he the only one in sort of the maintenance department? I assume he was the highest paid person. I believe he was the only one in the maintenance department, but I can't recall the salaries of the other individuals. I apologize. So he was the only person expendable in his whole department. Again, I can't recall. That's the problem, see, because people who get long in the tooth and they tend to make more money. You could always say that. They'll be targeted. The problem, it seems to me, because the longer you tend, you have promotions over the years, you make more money, and then you say, well, we've got budget, so then you chop off at the top. But here it's mingled with the idea he put in that he wanted to renew. And then you went through a process of trying to encourage him, I'm going to say encourage on your side, to get him to retire. He did submit his intent to return form, but that's in the context of he's been talking about retiring for the last 10 years, and then he brings it up again and says he wants to retire. And Mr. Emick says, Dr. Muir is not going to believe you this time. She's not going to believe you anymore until you put it in writing, and that's what he did. Who were these 13 other employees? Does the record show that? Were they custodial employees, or are we talking about other types of employees? They were all types of employees. Were there any other custodial employees eliminated? Does the record show that? I don't recall. If I could have just a moment to get the joint appendix, Your Honor. Okay. Thank you. Ms. Haney, I don't want you to take too much of your time. You're saying that it is in the record? Yes, I apologize. Are you referring to 441? It looks like two preschool teachers, two preschool instructional assistants. Is that the list you have in mind? One special education teacher, one reading specialist. That is a partial list. There's actually an exhibit that we submitted. It's in the joint appendix. I apologize. Ms. Haney, you said something that was very interesting. You said that the response to him was, she's not going to believe you this time. What does that mean? That's a non-sequitur. Unless you put it in writing, she's not going to believe you this time. That was suggested in the previous times. She didn't believe him? What does that mean? As Mr. Harris testified, he'd been talking about retiring for the last 10 years. He returns his notice of intent form, but then he talks about retiring. And so what Mr. Harris testified was that Mr. Emick said, she's not going to believe you unless you put it in writing. What I think that means is that he'd been talking about retiring. They're trying to get a straight answer out of him about whether he's going to retire or not. The man is 71 years old. He could retire any time he wanted. He could, and he could have retired 10 years ago. And what they wanted to know was, what are your intentions this year? Because him returning the notice of intent form, but then still talking about retiring doesn't give them a clear answer. A fair inference in this record is that they pushed him toward retirement, isn't it? I know you represent the school board, but a fair inference in this record is they pushed him toward retirement. Even though he had some inclination for 10 years, this year they pushed him to move it forward in writing. That's what you just said. She's not going to believe you this time if you don't put it in writing. Put it in writing. Do that. And then when you come back, put a date on there. You have to do that if you want her to believe. Why is that not a fair inference in this record? I'm just asking you that. Can you answer that? Why is that not a fair inference for this record? Because there's also testimony in the record that Mr. Emig was aware of the budget concerns and was trying to find a solution for Mr. Harris. And so if this was going to be the year that Mr. Harris retired, then that was a factor that he could use to balance the budget. And so what is also lacking is any evidence that this was motivated by race. Or age. In that regard, the list you had in mind, I think, is at paragraph 6 of Dr. Miera's declaration at 429 in the record, which includes two custodians, two special education teachers, and so on. And the ages range from age 27 up through even a 76-year-old custodian. That's the list you referred to. And I apologize. I wasn't able to point the court to it sooner. Actually, 24 is the youngest special education teacher. And so there were two custodians from that department who were also. One was 76 years old? Yes, Your Honor. One of the custodians was 76. One of the custodians was 72. Mr. Harris was 73 at the time. He's listed under Director of Maintenance. But then it ranges all the way down to a 24-year-old special education teacher, a 28-year-old instructional assistant. Were the 20-year-olds a custodian or those were just the three 70-year-olds? The 72 and 76-year-olds were. 76, 72, 71 were the three custodians in maintenance, right? Yes, Your Honor. No 20-year-olds there, right? No, Your Honor. Does seniority count for anything when you determine who has to go? No, Your Honor. Oh, it doesn't? So you've been in the job for 40 years. You get no brownie points for saying that, hey, he showed up or she showed up for 40 years and somebody just got there three months. They keep their job? Not necessarily by law, Your Honor, but I think the facts in this case show that Mr. Harris did get that consideration because they were trying to find out what his intentions were. And, again, it's important to remember that there isn't any evidence that the school board didn't actually believe that he wanted to retire. That's what Mr. Harris testified to. That's what the school board member testified to. There's no evidence that the school board didn't actually believe this. Where I think the rub is is what Mr. Emmett believed, but there's an important factor here, which is this. In their brief, in Mr. Harris' brief, he argues that the actions of supervisors subject the employer to liability. That is not the law in this circuit. Harris cites the Hill case, Hill v. Lockheed, but he doesn't apply it correctly. Under the Hill case, the actions of just any supervisor don't subject the employer to liability for race or age discrimination. The actions, for example, in the Hill case. I'm not sure of the relevance of any of that. What are you getting at? He was terminated. He was. There's no question that he was subjected to an adverse employment action. But you have to connect the discriminatory animus to the termination. And so in this case, there's no question that the school board had no discriminatory animus. Mr. Harris conceded that they didn't. He conceded that they eliminated his position because they believed he wanted to retire. That's at 269 and 270 in the record. That's Mr. Harris' testimony. And so, for example, in the Hill case, Fultz was. I'm sorry. So in other words, I guess I didn't understand what you just said. You're saying that Ms. Queen is arguing that there's no allegation of racial or age animus on the part of any member of the board. And therefore, under Hill, you need to drop down. Is that what your understanding of Ms. Queen's argument is? That is my understanding of Ms. Queen's argument. And so the recommendation to the board was rooted in animus, even though the board itself did not entertain any animus. I believe that that is part of Ms. Queen's argument. But I think that that argument is, when you look at the facts, is a misapplication of the Hill case. In Hill, Hill is terminated. There's no allegation that her supervisor or her supervisor's supervisor who made the call to terminate her had any discriminatory animus. The only person in that case that had a discriminatory animus was a man named Fultz, who was a safety inspector. He wasn't a supervisor. Fultz caught Hill in some safety violations and reported him to her supervisor, who reported them up the chain, and she was ultimately terminated. What this court held was that even though Fultz had a substantial influence on the outcome, he wasn't an actual decision-maker whose actions could subject the employer to liability. And so at best, what Harris has here is Emig knew Harris didn't really want to retire. That's Ms. Queen's argument. Emig knew Harris didn't really want to retire, and the inferences are that Emig concocted this. But there is no evidence in the record that Emig is an actual decision-maker whose actions can subject the school board to liability. What about the superintendent? There's no allegation in the record either. It wasn't argued that the superintendent is an actual decision-maker. I find that an odd argument on this record. I would have thought you'd be arguing that there's no evidence of animus on the part of either one of them. There isn't any. There isn't any, and I think that that's what the district court found. But even if you assume that there was, there's no— Why would you invite us to assume that there was? I got my arguments out of order, Your Honor. Okay, fair enough. Finally, I would like to point to one quick point that is argued in our brief, and that is this. There's no evidence in the record that the school board considered, despite their argument to the contrary, there's no evidence in the record that the school board considered the recommendation to eliminate Mr. Harris' position before he wrote that letter. There's an exhibit in the joint appendix that was not presented to the district court. The documents are presented out of order, and it's clear when you look at the summary judgment record that what's represented here is the minutes of the January 27th meeting, wasn't the minutes of that meeting. And I thank you for your time. Thank you. And ask that you reverse—I'm sorry, ask that you affirm the decision of the district court. Thank you, Ms. Haney. Ms. Queen, you have some time reserved. Thank you. First of all, I'm sure you all have seen, there's nothing in the record from Paul Immig. There's no statement. There's no affidavit. There's no anything. So I think at the district court level and under Anderson, they were supposed to believe Mr. Harris' interpretations of all of these events. If you look at page 497 of the record, that is Mr. Harris' letter that you are correct, Judge Gregory, that Paul Immig told him to write, told him what to say. And it is, I am considering retiring. That letter, this letter does not— It seems to me it's pretty plain reading. I don't understand that. Go ahead. Yes, Your Honor, I completely agree with you. Considering is considering. It doesn't mean that you were going to do it. And I think that the school board, in contradiction to what Ms. Haney said, I think that they were aware that there was a question about whether or not Mr. Harris was going to retire. And I'm sure you all know it's a school board. Mr. Harris is a custodian. There's a big difference here. And all the information that goes to the school board goes through the superintendent. And I think she presented testimony and evidence that she had informed the school board that there was questions all along whether or not Mr. Harris was going to retire. At page 513 of the record, there's an email from her to the school board members where she is telling them that he won't retire unless he gets his leave, which is potentially what he has been saying all along. And the school board was aware of that before they took the action. It was conditioned. Yes, sir, that's correct. Her email was dated Sunday, June 9th—I'm sorry, March 8th, 2009. She sent it at noon. And Mr. Harris's position was eliminated all by itself, not with the other 13 people, two days later. That's in the record from the school board minutes that were there. So I think that there are certainly questions of what they knew, and the information that they received was all from the superintendent from the school system. So your contention is that Dr. Mira was motivated on the basis of race and or age. Yes, sir. I think that that is—I think that absolutely that that is part of it. And what is the best evidence in the record of that? Well, the worksheet that's dated January 27th has Mr. Harris's position. It's eliminated. Okay. What's the evidence that that's based on race or age? It all—Your Honor, it all goes together. See, and that's going to be your argument to the jury if you get a trial, that it must be race, it must be age. I mean, is that really what you're left with? Well— It must be? I don't—well, what other reason would there be? When you have his prima facie case, plus— Because they wanted to save $100,000 at a time of fiscal challenge. I think that the pressure on him to get him out of that school system— Was based on race or age. I think that it is based on his age, and I think that it is based on his race. And under the formula— And what's the evidence of that? The formulas that the Supreme Court and this court have held, it is the pressure that is put on him, the comments from Dr. Muir to the school system. Everybody's afraid of what he and his friends will do. She's the one that inserted race into here. But under the formulas that have been created, I believe that we could prove and you could certainly infer based on not only the pressure for him, but when you look at the school minutes, when you look at the gentleman came to the school board meeting on February 10th and was told basically to sit down, that I think that you can infer that, that there is a racial animus that's there. I mean, this is Powhatan County. It's small. It's very rural. Would you have a race claim if he were white? Everything else is exactly the same except Mr. Harris is white. Or let's say Asian-American. Well, Asian-American, potentially. Yes? I think yes. So as long as he's not white, you have a race claim? I think that we do. Really? Yes, sir, I do. I think that we do have a race claim. Going back to age, also the fact that the other custodians were 70-year-olds, correct? Yes, sir. And the person who got a part of his job was under 40, correct? Was he? Your Honor, I can't answer that. Mr. Wilson, who the school board gave his supervisory responsibilities, was in his 50s. Is that the one that got the $10,000 extra? That is the one that got the $10,000 extra. He was in his 50s. I don't know. My guess from looking at him two years ago was he would be between 50 and 55, but I'm not 100 percent sure of that. But he is significantly younger than Mr. Harris was. And if this case was purely economic, then you wouldn't have to go through the dog and pony show of writing a letter. You just tell them that it's eliminated because we need your money. Yes, sir, but they never did that. They did. Instead, they said you need to retire. That was because of his age, would you say? Yes, sir. That's your argument. I do believe that it is part of his age. The pressure, I think that if you look back, that this started in the May 2008-2009.  The school board claims it was because that's when he reorganized the department. But if you look at page 510 of the record, we've submitted an affidavit from a gentleman named Michael Johnson, who was there in 2004 when Dr. Mirra was the one that created that separation. She put Mr. Johnson into that position along with a gentleman named Lenny Johnson, who my understanding is no relation. And that process was put in there. I really think that they wanted Mr. Harris gone. And the pressure and the write the letter to see if you're going to get your money and coming to the school board meeting and, well, you sit down, because we're not going to talk about that. And he did. And from his perspective, he looks at the school board. They're the highest level within the system that he is working. So you do what you say. But all the information that is provided to them, every bit of it came from Dr. Mirra. I take it Dr. Mirra is not black? No, sir, she is not. What if she were African American? How would you answer my earlier question? If Mr. Harris is black and she's black, do you have a race claim? Probably not. Probably not? No, sir. What if she's black and he's white? Do you have a race claim? Yes. Really? I think we have a reverse race claim, yes, sir. A reverse race?  So in other words, your theory seems to be anytime a supervisor recommends the elimination of a position held by someone other than his or her own race, you've got a pretext case. No, sir. I'm really confused. I think that when you look at everything altogether and the pressure and the elimination of his position all by himself, with the comments to the school board members, they're now believing that he doesn't produce. There's nothing in the record that he wasn't doing his job efficiently. I think that that all goes, I think it goes towards both of those. And I think that we have provided genuine issues here for the court to determine. I think we've provided evidence of pretext because this all started from their saying, Mr. Harris claims to write me out of the budget, and he says no, that he did not. And there's no affidavit, there's no anything from anybody to contradict that. So I think under Anderson that the court should have interpreted that and interpreted the important fact of that letter in Mr. Harris's favor, and I don't believe that they did that. Were the other custodians, were they black? I don't know the answer. One was black and one was white. So you don't have any record in that regard. Yeah, I do. I thought that your only argument was, it's kind of very thin, is that the reference to the NAACP. Well, that is part of it when you look at everything together. It pretty much is, I would think, in this record. Unless you go with what Judge Davis asked me to invite you to say whenever, otherwise it would be that per se almost claim if it's race differences in terms of acting. I thought it was because of the reference of it was totally unnecessary, it had nothing to do with the NAACP being brought in. I thought that was your evidence of animus. He had made it different. That is. But he underreads. I don't have to produce a specific statement here. That's right. Exactly. That's right. So we would request that you overturn the decision of the district court. And thank you so much for listening on behalf of Mr. Harris. Absolutely. Thank you very much for your arguments. We'll come down and greet counsel and then we'll proceed to our next case.
judges: Roger L. Gregory, Andre M. Davis, Barbara Milano Keenan